Nicole M. Norris (SBN 222785)
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone: 415-591-1000
Facsimile: 415-591-1400
Email: nnorris@winston.com

James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: 312-558-5600
Facsimile: 312-558-5700
Email: jhurst@winston.com; ddoyle@winston.com; spark@winston.com

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20007
Telephone: 202-282-5000
Facsimile: 202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ABBOTT LABORATORIES, <br><br> Defendant. <br><br> [caption continues next page] | **No. C 07-5985 CW** <br><br> *Related Per November 30, 2007 Order to Case No. C 04-1511 CW* <br><br> **NOTICE OF MOTION AND MOTION OF ABBOTT LABORATORIES TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO 12(b)(6)** <br><br> Date: March 6, 2008 <br> Time: 2:00 p.m. <br> Courtroom: 2 (4th Floor) <br> Judge: Hon. Claudia Wilken |

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

| | | |
|---|---|---|
| 1 | RODCHESTER DRUG CO-OPERATIVE, INC., on behalf of itself and all others similarly situated, | ) ) ) | **No. C 07-6010 CW** |
| 2 | | ) ) | *Related Per December 3, 2007 Order to Case No. C 04-1511 CW* |
| 3 | Plaintiffs, | ) ) | |
| 4 | vs. | ) ) ) | **NOTICE OF MOTION AND MOTION OF ABBOTT LABORATORIES TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO 12(b)(6)** |
| 5 | ABBOTT LABORATORIES, | ) ) ) | |
| 6 | Defendant. | ) ) | |
| 7 | | ) ) ) | Date:       March 6, 2008
Time:       2:00 p.m.
Courtroom: 2 (4th Floor) |
| 8 | | ) | Judge:      Hon. Claudia Wilken |
| 9 | | ) ) | |
| 10 | LOUISIANA WHOLESALE DRUG COMPANY, INC., on behalf of itself and all others similarly situated, | ) ) ) | **No. C 07-6118 CW** |
| 11 | | ) ) | *Related Per December 10, 2007 Order to Case No. C 04-1511 CW* |
| 12 | Plaintiffs, | ) ) | |
| 13 | vs. | ) ) ) | **NOTICE OF MOTION AND MOTION OF ABBOTT LABORATORIES TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLAIMS PURSUANT TO 12(b)(6)** |
| 14 | ABBOTT LABORATORIES, | ) ) ) | |
| 15 | Defendant. | ) ) | |
| 16 | | ) ) ) | Date:       March 6, 2008
Time:       2:00 p.m.
Courtroom: 2 (4th Floor) |
| 17 | | ) | Judge:      Hon. Claudia Wilken |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................2

STANDARD OF REVIEW .............................................................................................................3

ARGUMENT ..................................................................................................................................4

I. The Meijer Plaintiffs' Summary Allegations Of Below-Cost Pricing Do Not State A Claim Under *Cascade* ................................................................................................4

II. The Meijer Plaintiffs' Unprecedented Allegations That Abbott Monopolized The Boosting Market Fail To State A Claim ..........................................................................6

III. Federal Circuit Precedent Independently Bars The Meijer Plaintiffs' Patent-Monopoly Leveraging Theory Of Antitrust Liability ........................................................................9

CONCLUSION ...............................................................................................................................9

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

i

NOT. OF MOT. AND MOT. OF ABBOTT TO DISMISS PLAINTIFFS' CONSOL. AMENDED COMPL. PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5985 CW, C 07-6010 CW, C 07-6118 CW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991) ...................................................................................................7

*Atari Games Corp. v. Nintendo of Am., Inc.*,
    897 F.2d 1572 (Fed. Cir. 1990)................................................................................................7

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)..................................................................................................... passim

*Brulotte v. Thys Co.*,
    379 U.S. 29 (1964)...................................................................................................................7

*Cascade Health Solutions v. PeaceHealth*,
    502 F.3d 895 (9th Cir. 2007) ........................................................................................1, 3, 4, 6

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...................................................................................3

*In re Graphics Processing Units Antitrust Litig.*,
    No. C 06-07417 WHA, 2007 WL 2875686 (N.D. Cal. Sept. 27, 2007)...................................3

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ...................................................................................................5

*Monsanto Co. v. McFarling*,
    302 F.3d 1291 (Fed. Cir. 2002)................................................................................................7

*Oroamerican Inc. v. D & W Jewelry Co.*,
    10 Fed. Appx. 516 (9th Cir. 2001)...........................................................................................8

*SMC Corp. v. Xerox Corp.*,
    645 F.2d 1195 (2d Cir. 1981)...................................................................................................9

*United States v. Generix Drug Corp.*,
    460 U.S. 453 (1983).................................................................................................................6

*Verizon Communs. Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004).................................................................................................................8

*Welcome Co., Ltd. v. Harriet Carter Gifts, Inc.*,
    No. CV 98-0598, 1998 WL 1770584 (C.D. Cal. Mar. 26, 1998) ............................................8

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

ii
NOT. OF MOT. AND MOT. OF ABBOTT TO DISMISS PLAINTIFFS' CONSOL. AMENDED COMPL. PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5985 CW, C 07-6010 CW, C 07-6118 CW

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1, 3, 6

Fed. R. Civ. P. 11 ................................................................................................................................. 6

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

NOT. OF MOT. AND MOT. OF ABBOTT TO DISMISS PLAINTIFFS' CONSOL. AMENDED COMPL. PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5985 CW, C 07-6010 CW, C 07-6118 CW

## NOTICE OF MOTION
## TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 6, 2008 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, before the Honorable Claudia Wilken, in the United States District Court for the Northern District of California, Oakland Division, defendant Abbott Laboratories will move this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Consolidated Amended Complaint filed on January 11, 2008, by: (1) Meijer, Inc., et al.; (2) Rochester Drug Co-Operative, Inc.; and (3) Louisiana Wholesale Drug Company, Inc. (collectively, "Meijer Plaintiffs"). This motion also incorporates by reference, and is intended to supplement, Abbott's contemporaneously-filed Omnibus Motion to Dismiss Plaintiffs' Sherman Act Claims Pursuant to Rule 12(b)(6) ("Omnibus Motion").

## **INTRODUCTION**

This Court should dismiss the Meijer Plaintiffs' Three-Count Amended Complaint in its entirety. Counts One and Two, like the related cases, assert "monopoly leveraging" claims, where Abbott purportedly "monopolized" the alleged "Boosted Market" by raising the price of a patented HIV drug, Norvir®, in the so-called "Boosting Market."

As Abbott explained in its Omnibus Motion, the Ninth Circuit rejected this antitrust theory in *Cascade Health Solutions v. PeaceHealth*, 502 F.3d 895 (9th Cir. 2007), which held that "above-cost pricing will not be considered exclusionary conduct for antitrust purposes." *Id.* at 912. None of the new plaintiffs, including the Meijer Plaintiffs in their original complaints, alleged that Abbott had engaged in below-cost pricing with respect to any of its HIV drugs and, thus, nobody stated a Sherman Act claim.

After being confronted with *Cascade*, the Meijer Plaintiffs changed their allegations. In their recently filed Amended Complaint, they added an allegation – "on information and belief" – that Abbott has engaged in below-cost pricing. (Am. Compl. ¶ 41). That conclusory allegation fails to state a claim under the Supreme Court's new Rule 12(b)(6) standard, which requires, particularly for antitrust cases, more than a "formulaic recitation of the elements of a cause of action" and, instead,

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

allegations of sufficient facts to demonstrate a "plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1967 (2007). Far from meeting the *Twombly* standard, the Meijer Plaintiffs plead no facts to support their below-cost allegation. No such facts exist. The Court has to look no further than a document cited in the Meijer Plaintiffs' own Amended Complaint to determine that their below-cost pricing allegation is baseless and false.

The Meijer Plaintiffs' Third Count is similarly defective and, in fact, completely contradicts their first two counts. In Counts One and Two, the Meijer Plaintiffs allege that Abbott sought to *discourage* Norvir sales to increase sales of Kaletra®. In Count Three, they allege that Abbott *encouraged* Norvir sales based on the theory that Norvir's original "low price" induced rival drug companies "to forego developmental alternatives and instead standardize around the use of Norvir for boosting purposes." (Am. Compl. ¶ 69). After Norvir allegedly "monopolized" that growing market through its license agreements, Abbott raised Norvir's price, purportedly resulting in the Meijer Plaintiffs paying a higher price for Norvir "than they would have paid absent Abbott's conduct." (*Id.* at ¶ 71).

But, in their Amended Complaint, the Meijer Plaintiffs repeatedly acknowledge that Abbott has patents over Norvir. As the Court remarked more than three years ago, "you have to plead something that isn't obviously covered by a patent monopoly. . . . You couldn't just come in and say . . . they're raising the price on Norvir when they have a patent on it." (Oral Arg. on Abbott Mot. to Dismiss 9/17/2004 at 17:23-18:3). That is exactly what the Meijer Plaintiffs are saying here. Their claim simply cannot survive their own acknowledgment that Norvir is patented.

Finally, for the reasons discussed in the Omnibus Brief, the Meijer Plaintiffs' patent-monopoly leveraging allegations also should be dismissed under Federal Circuit precedent, which controls this case and has squarely rejected the Meijer Plaintiffs' theory of antitrust liability.

## BACKGROUND

This is a putative class action antitrust case brought by a pharmaceutical retailer and pharmaceutical wholesalers. In the first two counts, the Meijer Plaintiffs' Amended Complaint purports to state claims for monopolization and attempted monopolization under section 2 of the

2

NOT. OF MOT. AND MOT. OF ABBOTT TO DISMISS PLAINTIFFS' CONSOL. AMENDED COMPL. PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5985 CW, C 07-6010 CW, C 07-6118 CW

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Sherman Act. (Am. Compl. ¶¶ 57-67). As in the other Norvir cases, the Meijer Plaintiffs allege that Abbott monopolized the purported market for boosted PIs by raising the price of its patented drug, Norvir, which is used to "boost" the activity of other PIs. The Meijer Plaintiffs complain that Abbott charges a "much lower price" for Norvir's active ingredient when it is bundled with another PI in the form of Kaletra. (*Id.* at ¶ 59).

Unlike the other Norvir plaintiffs, however, the Meijer Plaintiffs summarily allege that Abbott has engaged in below-cost pricing in the Boosted Market. (*Id.* at ¶ 41). Specifically, they allege "on information and belief . . . if the penalty a purchaser would pay on the required dosage of Norvir for buying a Boosted-PI from a supplier other than Abbott were subtracted from the imputed price of the Boosted-PI portion of Kaletra, then the resulting price would be below Abbott's average variable costs relating to the Boosted-PI portion of Kaletra[.]" (*Id.*). These allegations obviously are designed to preempt Abbott's reliance on *Cascade* – which, again, requires a plaintiff to plead below-cost pricing to state a claim for an antitrust violation based on a bundled discounting theory.

Also unique to the Meijer Plaintiffs' Amended Complaint is the third cause of action, which alleges for the first time in any of the Norvir cases that Abbott monopolized the Boosting Market, which "consists of Norvir alone." (*Id.* at ¶¶ 43, 68-71). According to the Meijer Plaintiffs, this belated allegation is justified because Abbott allegedly stifled innovation in the Boosting Market and thus suppressed competition. (*Id*. at ¶ 36). The Meijer Plaintiffs seek to recover drug overcharges that they claim they have had to pay since the price increase. (*Id.* at ¶¶ 47, 71).

## STANDARD OF REVIEW

Rule 12(b)(6) "tests the legal sufficiency of the claims alleged in the complaint." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1093 (N.D. Cal. 2007). "'[A] plaintiffs' obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 127 S. Ct. at 1964-65 (internal citations omitted)). To survive a motion to dismiss, a plaintiff must allege facts sufficient to demonstrate "plausible entitlement to relief." *Twombly*, 127 S. Ct. at 1967; *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417 WHA, 2007 WL 2875686, at *8 (N.D.

Cal. Sept. 27, 2007). A "bare assertion" of a violation of the law will not suffice. *Twombly*, 127 S. Ct. at 1966.

**ARGUMENT**

The Meijer Plaintiffs have failed to allege facts sufficient to demonstrate a plausible entitlement to relief under the Sherman Act. Accordingly, all three causes of action in the Amended Complaint should be dismissed with prejudice.

**I. The Meijer Plaintiffs' Summary Allegations Of Below-Cost Pricing Do Not State A Claim Under *Cascade***

The Meijer Plaintiffs' first two causes of action for actual and attempted patent-monopoly leveraging should be dismissed under *Cascade*, which is discussed in depth in Abbott's Omnibus Motion. In *Cascade*, the Ninth Circuit held that proving exclusionary conduct under the Sherman Act in the context of bundled discounting requires proof of below-cost pricing. *Cascade*, 502 F.3d at 920. As the Court explained, "the plaintiff must establish that, after allocating the discount given by the defendant on the entire bundle of products to the competitive product or products, the defendant sold the competitive product or products below its average variable cost of producing them." *Id.* As discussed in the Omnibus Motion, none of the other Norvir plaintiffs alleged below-cost pricing and, therefore, their complaints must be dismissed under *Cascade*. The question here is whether the Meijer Plaintiffs' unsubstantiated parroting of the above language fares any better.

It plainly does not. The Meijer Plaintiffs' sole effort to meet the below-cost pricing standard under *Cascade* is their allegation, "*on information and belief*," that "if the penalty a purchaser would pay on the required dosage of Norvir for buying a Boosted-PI from a supplier other than Abbott were subtracted from the imputed price of the Boosted-PI portion of Kaletra, then the resulting price would be below Abbott's average variable costs relating to the Boosted-PI portion of Kaletra[.]" (Am. Compl. ¶ 41 (emphasis added)). In other words, the Meijer Plaintiffs claim that when you take out the cost of the Norvir component of Kaletra after the price increase, Abbott is offering the "boosted" (or lopinavir) component of Kaletra at a price that falls below its cost of producing that component.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

This barebones allegation cannot withstand dismissal. As the Supreme Court recently made clear in *Twombly*, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65. Rather, the allegations must provide a "*plausible* entitlement to relief." *Id*. at 1967 (emphasis added). This standard requires courts to "tak[e] care" when scrutinizing antitrust allegations "to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support" a claim for relief. *Id*. at 1967 (citations omitted); *see also id*. ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'").

Under *Twombly*, the Meijer Plaintiffs must do more than summarily plead below-cost pricing without further alleging facts to substantiate this flimsy conclusion. This is especially true here, where there is no "reasonably founded hope" that the Meijer Plaintiffs can support their below-cost pricing allegations, particularly because Abbott's actual prices are widely-known public knowledge and nobody ever has alleged below-cost pricing. Indeed, Abbott's prices are referenced in a document cited in the Amended Complaint itself. In paragraph 32 of the Amended Complaint, the Meijer Plaintiffs cite a June 2004 letter issued by the U.S. Department of Health & Human Services ("HHS"). This Court may, and should, consider the contents of this letter in the Rule 12(b)(6) context under the incorporation by reference doctrine. "[T]he incorporation by reference doctrine . . . permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (citation omitted) (alteration in original).

This HHS letter shows that the Meijer Plaintiffs have no "plausible" claim that Abbott sells Kaletra below its cost. According to a chart on page seven titled "Daily Cost of Common ARV Agents," the price of 100 milligrams ("mg") of Norvir after the price increase was $8.57, and the price of Kaletra (133.3mg lopinavir/33.3mg x 6 of ritonavir) was $18.78. (Declaration of Nicole M.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Norris, Ex. A at 7). As indicated in the chart, the Norvir (or ritonavir) component of Kaletra is 33.3mg x 6, or 200mg. Through simple arithmetic, one can determine that the wholesale cost of 200 mg of Norvir is $17.14 ($8.57 times two). At the very worst-case scenario, the Meijer Plaintiffs could (incorrectly) subtract the *entire* wholesale price of $17.14 from the $18.78 price for Kaletra, which *still* yields a positive price of $1.64 for the lopinavir component.

Thus, under *Cascade*, the Meijer Plaintiffs must plead *at least* that it costs Abbott more than $1.64 to manufacture just the lopinavir portion of a Kaletra pill. *See Cascade*, 502 F.3d at 920. The Meijer Plaintiffs have not made that allegation. Nor could they do so consistent with their Rule 11 obligations to this Court. The enormous cost of developing pharmaceuticals is the research and development required to invent and test the compound, not the inexpensive manufacturing process. *See United States v. Generix Drug Corp.*, 460 U.S. 453, 455 n.1 (1983) (stating that generic drugs "are usually marketed at relatively low prices because their manufacturers do not incur the research, development, and promotional costs normally associated with the creation and marketing of an original product"). That is the reason nobody has ever accused Abbott of below-cost pricing – it is an absurd allegation given the realities of low-cost pharmaceutical manufacturing.

In the end, the Meijer Plaintiffs' below-cost pricing allegations do not withstand *Twombly* scrutiny. Indeed, they are "nonsensical" in light of: (1) the pricing information incorporated into the Amended Complaint; and (2) the absence of any similar allegations before now, particularly considering the intense scrutiny the Norvir price increase has had for nearly four years. To survive Rule 12(b)(6), the Meijer Plaintiffs need to allege at least a "*plausible* entitlement to relief." *Twombly*, 127 S. Ct. at 1967 (emphasis added). They have not done so and, thus, the Court should dismiss Counts One and Two.

## II.  The Meijer Plaintiffs' Unprecedented Allegations That Abbott Monopolized The Boosting Market Fail To State A Claim

Throughout the nearly four years of litigation concerning Norvir's price increase, nobody has ever contested that Abbott has a legal monopoly over the Boosting Market – that is, the one-product market covering Norvir's active ingredient, ritonavir. There is good reason for that. Norvir is

indisputably patented, and the patent laws protect Abbott's monopoly in that alleged market. Indeed, as this Court noted years ago, "[y]ou couldn't just come in and say . . . they're raising the price on Norvir when they have a patent on it." (Oral Arg. on Abbott Mot. to Dismiss 9/17/2004 at 17:23-18:3). The Court also noted that the Doe plaintiffs "concede that Defendant owns a monopoly in the booster [or boosting] market. Plaintiffs define the booster [or boosting] market as the market for Norvir and its use as a boosting agent." (10/21/04 Order at 5; *compare* Am. Compl. ¶ 43 (alleging that Boosting Market "consists of Norvir alone")).

But the Meijer Plaintiffs have taken a different view of the case by alleging – for the first time in this litigation – a Boosting Market monopoly theory. According to their Amended Complaint, Abbott suppressed competition by "deceptively induc[ing] rivals to forgo developmental alternatives and instead standardiz[ing] around the use of Norvir for boosting purposes." (Am. Compl. ¶ 69). Plaintiff claim to have paid "higher prices to purchase the relevant products than they would have paid absent Abbott's conduct." (*Id.* at ¶ 71).

The antitrust theory underlying these allegations is not entirely clear, but it does not matter because, as this Court previously recognized, antitrust laws are implicated only when a patent owner "extends its monopoly beyond the scope of the patent." (10/21/04 Order at 4). That is because a patentee cannot "unlawfully" monopolize a market covered by a patent. As the Supreme Court explained, "[a] patent empowers the owner to exact royalties as high as he can negotiate with the leverage" of that monopoly. *Brulotte v. Thys Co.*, 379 U.S. 29, 33 (1964). The Federal Circuit similarly noted that "'[t]he owner of a patented article can, of course, charge such price as he may choose.'" *Monsanto Co. v. McFarling*, 302 F.3d 1291, 1299 (Fed. Cir. 2002) (citation omitted). And, as the Ninth Circuit put it: "[S]etting high prices in the original 'monopoly' market" is among the "ways that a monopolist can permissibly benefit from its position." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548 (9th Cir. 1991); *see also Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1576 (Fed. Cir. 1990) (holding that antitrust laws are implicated only when the patent owner extends its monopoly power "beyond the limits of what Congress intended to give in the patent laws").

The Supreme Court explained that natural monopolies, such as those resulting from "a superior product" or "business acumen," are "an important element of the free-market system." *Verizon Communs. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). In fact, the "opportunity to charge monopoly prices—at least for a short period [e.g., for the duration of a patent's life]—is what attracts 'business acumen' in the first place; it induces risk taking that produces innovation and economic growth." *Id.* Accordingly, "[t]o safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." *Id.* (emphasis omitted).

The Meijer Plaintiffs have simply failed to allege any conduct that extends "beyond" the scope of the Norvir patents. The Meijer Plaintiffs concede that Abbott's work developing Norvir resulted in a patented product for which "there is no substitute." (*See* Am. Compl. ¶¶ 12-14). As a result of this innovation, Abbott has the legal "opportunity to charge monopoly prices—at least for a short period" in this market while its patents allow it exclusivity. *Verizon*, 540 U.S. at 407.

The Meijer Plaintiffs repeatedly acknowledge in their Amended Complaint that Abbott's Norvir patents cover the Boosting Market. They allege that "Abbott has never sought to use its *intellectual property* to prevent other manufacturers from creating and selling Boosted-PIs that rely on Norvir's use. Indeed, Abbott has disclaimed such a use from the exclusionary scope of its *patent rights*." (Am. Compl. ¶ 15 (emphasis added)). They further allege that "Abbott profited [from these patents] by licensing competitors the right to market PIs to be co-administered with Norvir." (*Id.*).[1]

As the other plaintiffs have recognized after nearly four years of litigation, Abbott's Norvir patent protection precludes a claim for Boosting Market monopolization. Accordingly, the Meijer

---

[1] The Court also can take judicial notice of the patents referenced in the Complaint to confirm that they do, in fact, expressly cover ritonavir. *See Oroamerican Inc. v. D & W Jewelry Co.*, 10 Fed. Appx. 516, 516 n.4 (9th Cir. 2001) (taking judicial notice of information from the United States Patent and Trademark Office); *Welcome Co., Ltd. v. Harriet Carter Gifts, Inc.*, No. CV 98-0598, 1998 WL 1770584, at *3 n.2 (C.D. Cal. Mar. 26, 1998) (taking judicial notice of a patent). This Court took judicial notice of two of Abbott's patents – Patent No. 6,037,157 and Patent No. 5,886,036 – in its Order regarding Abbott's motion to dismiss in the related Doe case. (*See* 10/21/04 Order at 5 n.1). Norvir also is covered by, among other patents, Patent No. 5,541,206, which is attached to the Declaration of Nicole M. Norris, Ex. B. *See* Electronic Orange Book, Approved Drug Products with Therapeutic Equivalence Evaluations, http://www.fda.gov/cder/ob/ (last visited January 31, 2008).

8

NOT. OF MOT. AND MOT. OF ABBOTT TO DISMISS PLAINTIFFS' CONSOL. AMENDED COMPL. PURSUANT TO RULE 12(b)(6)
CASE NOS. C 07-5985 CW, C 07-6010 CW, C 07-6118 CW

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1  Plaintiffs also have no "plausible entitlement to relief" with regard to the third cause of action.
2  *Twombly*, 127 S. Ct. at 1967; *see also SMC Corp. v. Xerox Corp.*, 645 F.2d 1195, 1206 (2d Cir.
3  1981) (in affirming dismissal of Sherman Act claim, court held that "where a patent has been
4  lawfully acquired, subsequent conduct permissible under the patent laws cannot trigger any liability
5  under the antitrust laws").

### III. Federal Circuit Precedent Independently Bars The Meijer Plaintiffs' Patent-Monopoly Leveraging Theory Of Antitrust Liability

This Court should dismiss the Meijer Plaintiffs' patent-monopoly leveraging allegations on the independent ground that they are barred by Federal Circuit precedent. To support this argument, Abbott incorporates by reference the arguments previously made on pages 12 through 13 of the Omnibus Motion, and pages 10 through 13 of Abbott's motion to dismiss the complaint filed by SmithKline Beecham Corporation d/b/a GlaxoSmithKline.

### **CONCLUSION**

For the reasons set forth above, this Court should dismiss all three counts in the Meijer Plaintiffs' Consolidated Amended Complaint with prejudice.

Dated: January 31, 2008                     WINSTON & STRAWN LLP


                                            By:  /s/ James F. Hurst

                                            Attorneys for Defendant
                                            ABBOTT LABORATORIES

**Winston & Strawn LLP**
**35 W. Wacker Drive**
**Chicago, IL 60601-9703**