LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Joseph R. Saveri (State Bar No. 130064)
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: jsaveri@lchb.com

*Local Counsel for Rochester Drug Cooperative, Inc.*

IRELL & MANELLA LLP
Alexander Frank Wiles (CA 73596)
Brian Hennigan (CA 86955)
Stephanie Kaufman (CA 162644)
Trevor Stockinger (CA 226359)
1800 Avenue of the Stars #900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
Email: awiles@irell.com; bhennigan@irell.com
skaufman@irell.com; tstockinger@irell.com

*Counsel for SmithKline Beecham Corporation, dba GlaxoSmithKline*

[Additional Attorneys and Plaintiffs on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SAFEWAY INC.; WALGREEN CO.; THE KROGER CO.; NEW ALBERTSON'S, INC.; AMERICAN SALES COMPANY, INC.; and HEB GROCERY COMPANY, LP, <br><br> Plaintiff, <br><br> vs. <br><br> ABBOTT LABORATORIES, <br><br> Defendant. | **Case No. C07-5470 (CW)** <br><br> *Related per October 31, 2007 Order to Case No. C-04-1511 (CW)* <br><br> **PLAINTIFFS' OPPOSITION TO ABBOTT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OMNIBUS MOTION TO DISMISS** <br><br> Date:      March 6, 2008 <br> Time:      2:00 p.m. <br> Courtroom: 2 (4th Floor) <br> Judge:     Hon. Claudia Wilken |

| | | |
|---|---|---|
| 1 | SMITHKLINE BEECHAM CORPORATION ) <br> d/b/a/ GLAXOSMITHKLINE, ) | **Case No. C07-5702 (CW)** |
| 2 | ) <br> Plaintiff, ) | *Related per November 19, 2007 Order to Case No. C-04-1511 (CW)* |
| 3 | ) | |
| 4 | vs. ) <br> ) | **PLAINTIFFS' OPPOSITION TO ABBOTT'S SUPPLEMENTAL BRIEF IN** |
| 5 | ABBOTT LABORATORIES, ) <br> ) | **SUPPORT OF ITS OMNIBUS MOTION TO DISMISS** |
| 6 | Defendant. ) <br> ) | **Date:    March 6, 2008** |
| 7 | ) <br> ) | **Time:    2:00 p.m.** <br> **Courtroom: 2 (4th Floor)** |
| 8 | ) | **Judge:    Hon. Claudia Wilken** |
| 9 | MEIJER, INC. & MEIJER DISTRIBUTION, ) <br> INC., on behalf of themselves and all others ) <br> similarly situated, ) | **Case No. C 07-5985 CW** |
| 10 | ) <br> Plaintiffs, ) | **PLAINTIFFS' OPPOSITION TO ABBOTT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OMNIBUS MOTION** |
| 11 | ) | **TO DISMISS** |
| 12 | vs. ) <br> ) | Date:       March 6, 2008 |
| 13 | ABBOTT LABORATORIES, ) <br> ) | Time:       2:00 p.m. <br> Courtroom:  2 (4th Floor) |
| 14 | Defendant. ) <br> ) | Judge:      Hon. Claudia Wilken |
| 15 | ) | |
| 16 | ROCHESTER DRUG CO-OPERATIVE, ) <br> INC., on behalf of itself and all others similarly ) <br> situated, ) | **Case No. C 07-6010 CW** |
| 17 | ) <br> Plaintiff, ) | **PLAINTIFFS' OPPOSITION TO ABBOTT'S SUPPLEMENTAL BRIEF IN** |
| 18 | ) | **SUPPORT OF ITS OMNIBUS MOTION** |
| 19 | vs. ) <br> ) | **TO DISMISS** |
| 20 | ABBOTT LABORATORIES, ) <br> ) | Date:       March 6, 2008 <br> Time:       2:00 p.m. |
| 21 | Defendant. ) <br> ) | Courtroom:  2 (4th Floor) <br> Judge:      Hon. Claudia Wilken |
| 22 | ) | |
| 23 | LOUISIANA WHOLESALE DRUG ) <br> COMPANY, INC., on behalf of itself and all ) <br> others similarly situated, ) | **Case No. C 07-6118 CW** |
| 24 | ) | **PLAINTIFFS' OPPOSITION TO ABBOTT'S SUPPLEMENTAL BRIEF IN** |
| 25 | Plaintiff, ) <br> ) | **SUPPORT OF ITS OMNIBUS MOTION TO DISMISS** |
| 26 | vs. ) <br> ) | Date:       March 6, 2008 |
| 27 | ABBOTT LABORATORIES, ) <br> ) | Time:       2:00 p.m. <br> Courtroom:  2 (4th Floor) |
| 28 | Defendant. ) <br> ) | Judge:      Hon. Claudia Wilken |

| | |
|---|---|
| RITE AID CORPORATION; RITE AID HDQTRS, CORP,; JCG (PJC) USA, LLC; MAXI DRUG, INC. d/b/a BROOKS PHARMACY; ECKERD CORPORATION; CVS PHARMACY, INC.; and CAREMARK, L.L.C.,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>ABBOTT LABORATORIES,<br><br>　　　　　　　Defendant. | **Case No. C07-6120 (CW)**<br><br>*Related per December 5, 2007 Order to Case No. C-04-1511 (CW)*<br><br>**PLAINTIFFS' OPPOSITION TO ABBOTT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OMNIBUS MOTION TO DISMISS**<br><br>Date:　　　　March 6, 2008<br>Time:　　　　2:00 p.m.<br>Courtroom:　2 (4th Floor)<br>Judge:　　　Hon. Claudia Wilken |

**INTRODUCTION**

Plaintiffs jointly submit this brief in response to issues raised by the Court at oral argument and by Abbott in its Supplemental Brief in Support of its Omnibus Motion to Dismiss. The fundamental distinction between this case and *Cascade Health Solutions v. PeaceHealth*, 515 F. 3d 883 (9th Cir. 2008), is the one described in Plaintiffs' initial briefs: Plaintiffs in this case are complaining about high prices, not about low prices. Plaintiffs allege that Abbott used a massive price hike on Norvir to handicap its competitors' efforts to sell complementary products that compete with Abbott's combination pill, Kaletra. Abbott does not stand accused of violating the antitrust laws because it discounted one of its products -- there was no discount -- but because it massively raised the price it charged for Norvir.[1]

Abbott argues that, because it did not raise its price of Kaletra (a product which contains the active ingredient in Norvir), this case is about the economic effect of low prices. Abbott concedes, as it must, that Plaintiffs can state a claim under the holding of *Cascade* by alleging that Abbott's pricing would prevent an equally efficient competitor from making a profit on additional sales after matching the imputed price of the competitive Abbott product.[2]

Sometime later in this litigation the Court may need to decide whether *Cascade* abrogated all other formulations of § 2 violations where pricing is involved -- whether, as Abbott contends, meeting that test is *necessary* to establish antitrust liability; or, as Plaintiffs contend, meeting it is

---

[1] Thinking that if it just says something often enough, it will become true, Abbott tells this Court (Br. at 2) that "there is no relevant distinction between this case and *Cascade*. Both cases involve a defendant offering a purportedly 'much lower price'. . . ." This is neither what the complaints allege nor what the facts are. Abbott has taken a massive price increase on Norvir. It has left the Kaletra price unchanged. There is no lower price, let alone a much lower one.

[2] Plaintiffs in *Meijer* have clearly alleged that Abbott is liable even under this standard. All of the other plaintiffs likewise believe that this test can be satisfied, if necessary.

- 1 -
PLAINTIFFS' SUPPLEMENTAL OPPOSITION
TO ABBOTT'S MOTION TO DISMISS

*sufficient*, but not necessary.[3]  Abbott inappropriately asks the Court to resolve this issue without regard to the unique circumstances of the pharmaceutical industry, and to resolve it *now* -- without the benefit of factual development and expert economic testimony.  The Supreme Court has made clear that courts must "resolve antitrust claims on a case-by-case basis, focusing on the 'particular facts disclosed by the record.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 467 (1992) (quoting *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 579 (1925)).  The economic effect of conduct can be determined only by a fact-intensive inquiry that is attuned to the "economic context," including the "particular structure and circumstances of the industry at issue." *Verizon Comm.'s Inc. v. Law Off. of C. V. Trinko*, 540 U.S. 398, 411 (2004).

**ARGUMENT**

As the Court suggested at oral argument, the particular structure and circumstances of the pharmaceutical industry must be considered in determining the application of *Cascade* to this case.  *First, Cascade* assumes that a monopolist's above-cost price *reductions* can and should be met with similar price cuts by its competitors, all to the good of consumers/purchasers.  *See Cascade*, 515 F.3d at 896.  But here Abbott's pricing action was *dramatic* in that word's root sense -- Abbott intended its 400% price increase to demonstrate to competitors that Abbott could and would raise Norvir's price at any time, making it *futile for competitors in the boosted market to try to compete with Kaletra on price*.  Abbott's message-sending pricing said to its competitors, in effect, "If you try to compete against Kaletra on price, we will raise the Norvir price even

---

[3] For example, the court in *Kodak* approved a jury instruction that, "It is unlawful…for a monopolist to engage in conduct, including refusals to deal, *that unnecessarily excludes or handicaps competitors in order to maintain a monopoly.*" *Image Tech. Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1209 (9th Cir. 1997) (emphasis in original).  *Kodak* in turn relied upon a very similar jury instruction that the Supreme Court approved in *Aspen Skiing*, *Co. v. Aspen Highlands Skiing Corp.*, 472 U.S 585, 597 (1985) ("We are concerned with conduct which unnecessarily excludes or handicaps competitors.  This is conduct which does not benefit consumers by making a better product or service available -- or in other ways -- and instead has the effect of impairing competition.").  In the circumstances alleged here, where a high price in one market is used to handicap competitors in another, these instructions provide a basis on which

higher." Far from stimulating rivals to reduce their own prices, Abbott's dramaturgical price increase on Norvir had the intended effect of stifling price competition by its boosted rivals.

*Second*, Abbott's increase in the price of Norvir, instead of a reduction in the price of Kaletra, strategically used government regulations to eliminate rivals' incentives to discount their products. Intricate rules lay out the rebates that a drug company must pay on drugs dispensed to Medicaid recipients and patients who have the benefit of ADAP (AIDS Drug Assistance Programs) or similar government programs. For example, the government pricing rule known as "Best Price," *see* 42 U.S.C. § 1396r-8(c)(1)(A), (C), provides that, if a drug manufacturer makes a price concession to any customer, it must cut price in the same amount to government programs.

Thus, if GSK or another Abbott competitor gave a rebate to private-sector customers to offset the roughly $13 per day increase in the price of Norvir, it would have to give the same discount to government programs, even though Abbott could not impose its massive price hike on the government. In other words, to remain competitive in the private-payer segment of the market, GSK would have to absorb a $13 price cut in that segment *plus* a $13 price cut in the government sector, where it was already price competitive. Thus, Abbott's strategic decision to increase the price of Norvir, rather than cut the price of Kaletra, would have required rivals seeking to match Kaletra's price to take a $26 hit to gain sales on products previously priced at around $16 -- something that no rational profit-maximizer would or could do.

Moreover, we believe that discovery will show that Abbott avoided the Best Price trap that it created for its rivals by telling the federal pricing authorities that Kaletra is a single product *whose price had not changed at all.* By raising Norvir's price while *telling the federal agencies that it had not reduced Kaletra's price*, Abbott prevented its rivals from matching Kaletra's price.

---

a jury can find the defendant to have engaged in anti-competitive conduct just as occurred in *Kodak* and *Aspen Skiing.*

1  By telling this Court the opposite -- that increasing Norvir's price was the equivalent of cutting

2  Kaletra's -- Abbott seeks to avoid the legal consequences of that anticompetitive conduct.

3        The facts of this particular case and this particular industry refute Abbott's assertion that a price increase on Norvir was the equivalent of a price reduction on Kaletra. The latter would have stimulated the responsive price reductions that are the foundation of *Cascade*; the former forestalled them. At a minimum, the choice of the appropriate rule of antitrust liability here should await discovery on how Abbott's message-sending pricing and strategic use of government regulations in fact affected the incentives of market participants, and should be informed by briefing that rests on expert reports on the economic significance of those facts.

      *Third,* this case involves differentiated products. The *Cascade* rule assumes that an "equally efficient producer" of the defendant's products could profitably sell the products if that competitor had the defendant's cost structure. *Cascade*, 502 F.3d at 914, 916.[4] In assuming that an equally efficient competitor could achieve the same cost structure as the defendant, the *Cascade* test necessarily assumes that the competitor and defendant are producing the *same* products.[5] The extent to which products are differentiated and the impact of that differentiation on the *Cascade* test are subject to factual development and expert testimony.

      *Fourth*, the importance of research and development to the pharmaceutical industry may well affect the application of *Cascade* to the facts of this case. R&D costs in the pharmaceutical industry are large relative to other industries, creating substantial barriers to entry, and thus

---

[4] The *Meijer* plaintiffs believe, as does Defendant, that the *Cascade* rule provides a bright line formula where the Defendant can be liable if an equally efficient competitor is prevented from making a profit on additional sales after matching the imputed price of the competitive Abbott product. Like all of the plaintiffs here, the *Meijer* plaintiffs disagree, however, that *Cascade* is the exclusive basis for antitrust liability in a Section 1 case involving pricing.

[5] Abbott is mistaken in contending that Plaintiffs' allegations regarding market definition are somehow inconsistent with the Court's observation that HIV drugs are not "fungible." Products need not be "fungible" in order to be in the same relevant market for analyzing a particular claim. They must be economic substitutes. *See, e.g., SmithKline Corp. v. Eli Lilly & Co.,* 575 F.2d 1056, 1063-65 (3d Cir. 1978) (finding that relevant product market consisted of approximately ten cephalosporin antibiotics and their generic equivalents).

- 4 -
PLAINTIFFS' SUPPLEMENTAL OPPOSITION
TO ABBOTT'S MOTION TO DISMISS

making the risk significantly greater here that applying *Cascade's* stringent bright-line test would allow anti-competitive behavior to escape scrutiny. And, unlike in other industries, competitors in the pharmaceutical industry face very significant ongoing R&D costs on products that they have already developed. They routinely incur these costs, for example, to get approval for new indications, to change the FDA-approved label, and for a myriad of other reasons. *See* Congressional Budget Office, *Research and Development in the Pharmaceutical Industry*, Ch. 2 p. 8 (Oct. 2006) (nearly 20% of reported R&D expenditures are for postmarketing activities). The *Cascade* court had no occasion to consider how ongoing R&D costs would impact its cost-based analysis.

Moreover, as discussed at oral argument, Abbott would have been required to spend millions of dollars on drug development and regulatory approval to sell lopinavir separately, something that it would be required to do for its conduct here to be "bundled discounting," *i.e.*, "offering for a single price, two…goods that could be sold separately." *Cascade,* 515 F.3d at 894. Similarly, *Cascade* had no occasion to consider whether the costs the defendant avoided by never in fact seeking to sell separately the second product in a bundle should be counted against the imputed price of that product. Clearly, expert economic testimony will be required to determine the effect of these unique aspects of R&D expenses on the *Cascade* analysis.

## **CONCLUSION**

Abbott cannot avoid liability under the antitrust laws for its conduct because Plaintiffs, if necessary, can satisfy the *Cascade* test that Abbott says is the exclusive means of establishing antitrust liability. The instant motion should be denied because a decision by this Court on the question of whether satisfying the *Cascade* test is necessary or merely sufficient must await the development of a factual record, supported by expert analysis, that takes into account the unique aspects of the pharmaceutical industry and the particular facts of this case.

| | |
|---|---|
| Dated:  March 20, 2008 | Respectfully submitted, |
| | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP |
| | By  /s/ Joseph R. Saveri |
| | Joseph R. Saveri (State Bar No. 130064)<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br>Email: jsaveri@lchb.com |
| | *Local Counsel for Rochester Drug Cooperative, Inc.* |
| | IRELL & MANELLA LLP |
| | By  /s/ Alexander Frank Wiles |
| | Alexander Frank Wiles (CA 73596)<br>Brian Hennigan (CA 86955)<br>Stephanie Kaufman (CA 162644)<br>Trevor Stockinger (CA 226359)<br>1800 Avenue of the Stars #900<br>Los Angeles, CA 90067<br>Telephone: (310) 277-1010<br>Facsimile: (310) 203-7199<br>Email: awiles@irell.com; bhennigan@irell.com<br>skaufman@irell.com; tstockinger@irell.com |
| | *Counsel for SmithKlineBeecham Corp. d/b/a GlaxoSmithKline* |
| | DILLINGHAM & MURPHY, LLP |
| | By  /s/ Barbara Lynn Harris Chiang |
| | William Francis Murphy<br>Email: wfm@dillinghammurphy.com<br>Barbara Lynne Harris Chiang<br>Email: bhc@dillinghammurphy.com<br>Edward Eldon Hartley<br>Email: eeh@dillinghammurphy.com<br>225 Bush Street, Sixth Floor<br>San Francisco, CA 94104-4207<br>Telephone: (415) 397-2700<br>Facsimile: (415) 397-3300 |
| | *Local Counsel for Safeway Inc., et al., and Rite Aid Corp., et al.* |

- 6 -
PLAINTIFFS' SUPPLEMENTAL OPPOSITION
TO ABBOTT'S MOTION TO DISMISS

BERGER & MONTAGUE, P.C.
Eric L. Cramer, Pro Hac Vice
Email: ecramer@bm.net
Daniel Berger
Email: danberger@bm.net
David F. Sorensen
Email: dsorensen@bm.net
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

*Lead Counsel for Rochester Drug Cooperative, Inc.*

GARWIN GERSTEIN & FISHER, LLP
Bruce E. Gerstein, Pro Hac Vice
Email: bgerstein@garwingerstein.com
Noah H. Silverman, Pro Hac Vice
Email: nsilverman@garwingerstein.com
1501 Broadway, Suite 1416
New York, New York 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620

*Lead Counsel for Louisiana Wholesale Drug Co., Inc.*

SPIEGEL LIAO & KAGAY, LLP

Charles M. Kagay (State Bar No. 73377)
Email: cmk@slksf.com
Wayne M. Liao (State Bar No. 66591)
Email: wml@slksf.com
388 Market Street, Suite 900
San Francisco, California 94111
Telephone: (415) 956-5959
Facsimile: (415) 962-1431

*Local Counsel for Plaintiff Louisiana Wholesale Drug, Co. Inc.*

KAPLAN FOX & KILSHEIMER LLP

Laurence D. King (SBN 206423)
Email: lking@kaplanfox.com
Linda M. Fong (SBN 124232)
Email: lfong@kaplanfox.com
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707

- 7 -
PLAINTIFFS' SUPPLEMENTAL OPPOSITION
TO ABBOTT'S MOTION TO DISMISS

Robert N. Kaplan, Pro Hac Vice
Email: rkaplan@kaplanfox.com
Linda P. Nussbaum, Pro Hac Vice
Email: lnussbaum@kaplanfox.com
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Meijer, Inc. and Meijer Distribution, Inc.*

**Additional Counsel for Plaintiffs (Client Not Specified):**

ODOM & DES ROCHES, LLP
John Gregory Odom, Pro Hac Vice
Email: greg@odrlaw.com
Stuart E. Des Roches, Pro Hac Vice
Email: stuart@odrlaw.com
John Alden Meade, Pro Hac Vice
Email: jmeade@odrlaw.com.
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Telephone: (504) 522-0077
Facsimile: (504) 522-0078

PERCY SMITH & FOOTE, LLP
David P. Smith, Pro Hac Vice
Email: dpsmith@psfllp.com
W. Ross Foote, Pro Hac Vice
Email: rfoote@psfllp.com
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
Telephone: (318) 445-4480
Facsimile: (318) 487-1741

KOZYAK TROPIN & THROCKMORTON
Tucker Ronzetti, Pro Hac Vice
Email: tr@kttlaw.com
Adam Moskowitz, Pro Hac Vice
Email: amm@kttlaw.com
2800 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2335
Telephone: (305) 372-1800
Telecopier: (305) 372-3508

- 8 -
PLAINTIFFS' SUPPLEMENTAL OPPOSITION
TO ABBOTT'S MOTION TO DISMISS

| | |
|---|---|
| 1 | AUBERTINE DRAPER ROSE, LLP |
| 2 | Andrew E. Aubertine, Pro Hac Vice<br>Email: aa@adr-portland.com<br>1211 SW Sixth Avenue |
| 3 | Portland, Oregon 97204<br>Telephone: (503) 221-4570 |
| 4 | Facsimile: (503) 221-4590 |
| 5 | |
| 6 | LAW OFFICES OF JOSHUA P. DAVIS<br>Joshua P. Davis (State Bar No. 193254) |
| 7 | Email: davisj@usfca.edu<br>437A Valley Street |
| 8 | San Francisco, CA 94131<br>Telephone: (415) 422-6223 |
| 9 | |
| 10 | VANEK, VICKERS & MASINI, P.C.<br>Joseph M. Vanek, Pro Hac Vice |
| 11 | Email: jvanek@vaneklaw.com<br>David P. Germaine, Pro Hac Vice |
| 12 | Email: dgermaine@vaneklaw.com<br>111 South Wacker Drive, Suite 4050 |
| 13 | Chicago, IL 60606<br>Telephone: (312) 224-1500<br>Facsimile: (312) 224-1510 |
| 14 | SPERLING & SLATER<br>Paul E. Slater, Pro Hac Vice |
| 15 | Email: pes@sperling-law.com<br>55 West Monroe Street, Suite 3200 |
| 16 | Chicago, Illinois 60603<br>Telephone: (312) 641-3200 |
| 17 | Facsimile: (312) 641-6492 |
| 18 | KENNY NACHWALTER, PA |
| 19 | Lauren C. Ravkind<br>Scott Eliot Perwin |
| 20 | Email: sperwin@kennynachwalter.com<br>One Congress Plaza |
| 21 | 111 Congress Avenue<br>Suite 1060 |
| 22 | Austin, TX 78701<br>Telephone: (512) 480-802 |
| 23 | |
| 24 | ARNOLD & PORTER<br>Kenneth A. Letzler, Pro Hac Vice |
| 25 | Email: Kenneth_Letzler@aporter.com<br>555 Twelfth Street, NW |
| 26 | Washington, DC 20004-1206<br>Telephone: (202) 942-5000 |
| 27 | Facsimile: (202) 942-5999 |
| 28 | |

- 9 -
PLAINTIFFS' SUPPLEMENTAL OPPOSITION
TO ABBOTT'S MOTION TO DISMISS

                    HANGLEY ARONCHICK SEGAL & PUDLIN
                    Steve D. Shadowen
                    Email: sshadowen@hangley.com
                    Monica L. Rebuck
                    Email: mrebuck@hangley.com
                    30 North Third Street, Suite 700
                    Harrisburg, PA 17101-1701
                    Telephone:  (717) 364-1007
                    Facsimile: (717) 362-1020

    I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document.