# Exhibit 2

# BERGER & MONTAGUE, P.C.

# BERGER & MONTAGUE, P.C.

**THE FIRM**:

Berger & Montague has been engaged in the practice of complex and class action litigation from its Center City Philadelphia office for over 35 years.  The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities,  mass torts, environmental, civil and human rights. In numerous precedent-setting cases, the Berger firm has played a principal or lead role.  The firm has achieved the highest possible rating by its peers and opponents as reported in Martindale-Hubbell.  Currently, the firm consists of almost 60 lawyers, approximately half of whom specialize antitrust litigation; 21 paralegals; and an experienced support staff.

Berger & Montague was founded in1970 by David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions.  David Berger pioneered the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts.  The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients.  In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery for class members.

In the area of antitrust litigation, the firm has served as lead or co-lead counsel on many of the most significant civil antitrust cases over the last 30 years, including the Infant Formula case (recovery of $125 million), and the Retail Drug price fixing case (settlement of more than $700 million), and the High Fructose Corn Syrup price-fixing case (settlement of more than $500 million).

In recent years, the firm has been extensively involved in antitrust litigation in the pharmaceutical and medical device fields, and has helped recover over $700 million in overcharges on prescription drugs such as Buspar, Cardizem, Children's Ibuprofen, Platinol, Relafen, Remeron, and Terazosin.

The firm has also been involved in a series of notable cases, some of them among the most important in the last 35 years of civil litigation.  For example, the firm was one of the principal counsel for plaintiffs in the Drexel Burnham Lambert/Michael Milken securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the

1

junk bond market and the bankruptcy of Drexel in the late 1980's. The firm was also among the principal trial counsel engaged in the trial of the Exxon Valdez Oil Spill in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion in punitive damages against Exxon. (On appeal, the award was reduced to $2.5 billion; certiorari granted, decision pending.) Berger & Montague was lead counsel in the School Asbestos Litigation, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis.

The *National Law Journal* in October, 2007 selected Berger & Montague as one of the 13 top plaintiffs' litigation firms in the U.S. based on its most recent performance and its track record of successes in the last 3-to-5 year period.

## PROMINENT ANTITRUST JUDGMENTS
## AND SETTLEMENTS IN THE PHARMACEUTICAL INDUSTRY

The success of Berger & Montague in prosecuting antitrust class actions is best demonstrated by the firm's significant results for its clients. The following is a partial list of some of the more notable antitrust judgments and settlements from the past few years in cases involving the pharmaceutical industry :

*In re Microcrystalline Cellulose Antitrust Litigation*: Berger & Montague was one of two co-lead counsel in this class action alleging a conspiracy to fix the price of microcrystalline cellulose, used in the manufacture of many pharmaceuticals. The case was settled shortly before trial for a total of $50 million.

*In re Relafen Antitrust Litigation:* Berger & Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone). Just before trial, the case was settled for $175 million. (No. 01-12239-WGY, D. Mass. 2003).

2

***North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:*** The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin). The case settled for $50 million (No. 1:04CV248 (EGS) (D.D.C. 2004)).

***In re Buspirone Antitrust Litigation:*** The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers. The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, namely, paying a competitor to refrain from marketing a generic version of Buspar; improperly listing a patent with the FDA; and wrongfully prosecuting patent infringement actions against generic competitors to Buspar. On April 11, 2003, the Court approved a $220 million settlement. (MDL No. 1410 (S.D.N.Y. 2003)).

***In re Cardizem CD Antitrust Litigation:*** Berger & Montague served on the Executive Committee of firms appointed to represent the class of direct purchasers of Cardizem CD. The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product. On November 26, 2002, the district court approved a final settlement against both defendants for $110 million. (No. 99-MD-1278, MDL No. 1278 (E.D. Mich. 2002)).

***In re Terazosin Hydrochloride Antitrust Litigation:*** Berger & Montague, P.C. served as a member of the Executive Committee representing a class of direct purchasers of the brand-name drug Hytrin, manufactured by defendant Abbott Laboratories. The class had alleged that Abbott entered into agreements and paid manufacturers of generic equivalents to keep those less expensive products off of the market. In April 2005, the district court approved a nearly $75 million dollar settlement of this class action.

*In re Remeron Antitrust Litigation:* Berger & Montague was one the core group of counsel representing a class wholesalers and pharmacies, charging these defendants with delaying the entry of generic versions of Remeron, and thereby violating the antitrust laws. On November 9, 2005, Judge Hochberg, United Stated District Judge of the District of New Jersey issued an opinion approving the $75 million settlement of these claims on behalf of the class.

*In re Brand Name Prescription Drugs Antitrust Litigation*: The firm served as co-lead counsel in this antitrust price-fixing class action on behalf of a class of purchasers of brand name prescription drugs. Following certification of the class by the district court, settlements exceeded $717 million. (No. 94 C 897 (M.D. Ill. 2000)).

## OTHER PROMINENT ANTITRUST
## JUDGMENTS AND SETTLEMENTS

*In re High Fructose Corn Syrup*: Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup. After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million.

*In re Linerboard Antitrust Litigation:* Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard. The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom. At the close of discovery, the case was settled for more than $200 million.

*State of Connecticut Tobacco Litigation:* Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

4

***In re Graphite Electrodes Antitrust Litigation:*** Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case eventually settled in excess of $134 million.

***In re NASDAQ Market-Makers Antitrust Litigation:*** Berger & Montague served on the Executive Committee of firms appointed to represent a class of over one million individual and institutional investors who purchased or sold shares of class securities on the NASDAQ. The suit alleged a conspiracy by defendants, who were all market-makers on the NASDAQ exchange, to fix the price of spreads and stocks traded on the exchange. On November 8, 1998, the district court approved final settlements against all defendants totaling approximately $1.027 billion. (MDL No. 1023, S.D.N.Y. 1998).

***In re Catfish Antitrust Litigation***: The firm was co-trial counsel in this action which settled with the last defendant a week before trial, for total settlements approximating $27 million. (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss. 1995)).

***In re Carbon Dioxide Antitrust Litigation***: The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial for total settlements approximating $53 million, plus injunctive relief. (MDL No. 940 (M.D. Fla. 1995)).

***In re Infant Formula Antitrust Litigation***: The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla. 1992)).

***In re Corrugated Container Antitrust Litigation:*** The firm was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following a trial. (MDL No. 310 (S.D. Tex. 1981)).

***Bogosian v. Gulf Oil Corp.:*** With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies lead to settlements of over $35 million plus equitable relief on the eve of trial. (No. 71-1137 (E.D. Pa. 1977)).

***In re Master Key Antitrust Litigation:*** The firm served as co-lead counsel in antitrust class action that yielded a settlement of $21 million during trial. (MDL No. 45 (D. Conn. 1977)).

## JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS

Berger & Montague's record of successful prosecution of class-actions has been recognized and commended by judges across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

From **Judge Joseph Blumenfeld**, of the U.S. District Court of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

> *In re Master Key Antitrust Litigation*, 1977 U.S. Dist LEXIS 12948, at *35 (Nov. 4, 1977).

From **Judge Donald W. Van Artsdalen**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various conditions, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief  would, in and of itself, justify some upward adjustment of the lodestar figure."

> *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Peter J. Messitte**, of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

> As stated in a Settlement Approval Hearing, Oct. 28, 1994, *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc*., CA No. PJM-92-3624.

> Regarding Lead Counsel Merrill G. Davidoff and Berger & Montague, P.C.

From **Judge Charles P. Kocoras**, of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

> *In re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, *4-6 (N.D. Ill. February 9, 2000).

7

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "Thanks to the nimble class counsel, this sum, which once included securities worth
> $149.5 million is now all cash. Seizing on an opportunity Rite Aid presented class
> counsel first renegotiated what had been stock consideration into Rite Aid Notes and
> then this year monetized those Notes. Thus, on February 11, 2003, Rite Aid
> redeemed those Notes from the class, which then received $145,754,922.00. The
> class also received $14,435,104 in interest on the Notes.

> "Co-lead counsel ... here were extraordinarily deft and efficient in handling this most
> complex matter... they were at least eighteen months ahead of the United States
> Department of Justice in ferreting out the conduct that ultimately resulted in the write
> down of over $1.6 billion in previously reported Rite Aid earnings. In short, it
> would be hard to equal the skill class counsel demonstrated here."

Praising the work of Berger & Montague attorneys in *In re Rite Aid Corp. Securities
Litigation*, 269 F. Supp. 2d 603, 605 (E.D. Pa. 2003).

From **Judge Marvin Katz**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "Class counsel did a remarkable job in representing the class interests."

Commenting on the work of Berger & Montague attorneys Merrill G. Davidoff, Todd S.
Collins, Jacob A. Goldberg, and Douglas M. Risen, on the partial settlement for $111 million
approved May, 2000, *In Re: IKON Offices Solutions Securities Litigation*, Civil Action No.
98-4286 (E.D. Pa. 2000).

From **Judge Helen J. Frye,** United States District Judge for the United States District Court for the
District of Oregon, in *In Re Melridge, Inc. Securities Litigation,* No. CV 87-1426-FR:

> In order to bring about this result [partial settlements then totaling $54.25 million],
> Class Counsel were required to devote an unusual amount of time and effort over
> more than eight years of intense legal litigation which included a four-month long
> jury trial and full briefing and argument of an appeal before the Ninth Circuit Court

of Appeals, and which produced one of the most voluminous case files in the history of this District.

* * *

Throughout the course of their representation, the attorneys at Berger & Montague and Stoll, Stoll, Berne, Lokting & Shlachter who have worked on this case have exhibited an unusual degree of skill and diligence, and have had to contend with opposing counsel who also displayed unusual skill and diligence.

Commenting, *inter alia*, on lead counsel, lead trial counsel and lead appellate counsel Merrill Davidoff in awarding fees on April 15, 1996.

From **Judge William K. Thomas,** Senior District Judge for the United States District Court for the Northern District of Ohio:

In the proceedings it has presided over, this court has become directly familiar with the specialized, highly competent, and effective quality of the legal services performed by Merrill G. Davidoff and Martin I. Twersky, Esq. of Berger & Montague...

* * *

... Examination of the experience-studded biographies of the attorneys primarily involved in this litigation and review of their pioneering prosecution of many class actions in antitrust, securities, toxic tort matters and some defense representation in antitrust and other litigation, this court has no difficulty in approving and adopting the hourly rates fixed by Judge Aldrich.

Commenting *In re Revco Securities Litigation*, Case No. 1:89CV0593, Order (N.D. Oh. September 14, 1993).

9

**From Stephen M. Feiler, Ph.D.,** Director of Judicial Education, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts, Mechanicsburg, PA *on behalf of the Common Pleas Court Judges (trial judges) of Pennsylvania*:

> "On behalf of the Supreme Court of Pennsylvania and AOPC's Judicial Education Department, thank you for your extraordinary commitment to the *Dealing with Complexities in Civil Litigation* symposia. We appreciate the considerable time you spent preparing and delivering this important course across the state. It is no surprise to me that the judges rated this among the best programs they have attended in recent years."

About the efforts of Berger & Montague attorneys Merrill G. Davidoff, Peter Nordberg and David Sorensen in planning and presenting a CLE Program to trial judges in the Commonwealth of Pennsylvania.

## THE SHAREHOLDERS

### H. Laddie Montague, Jr.

H. Laddie Montague, Jr. is a graduate of the University of Pennsylvania (B.A. 1960) and the Dickinson School of Law (L.L.B. 1963) where he was a member of the Board of Editors of the *Dickinson Law Review*. He was Chairman of the Board of Governors for Dickinson School of Law of Penn State University, and is currently Chairman of the Board of Directors of the Dickinson Law Association. He is a member of the Executive Committee of the firm having joined its predecessor David Berger, P.A. at its inception in 1970. He is a managing principal and shareholder of the firm and is Chairman of the Antitrust Department.

The most recent editions of Chambers USA's <u>American Leading Business Lawyers</u> have repeatedly singled out Mr. Montague as one of the top antitrust attorneys in the country, and lauded him for his stewardship of the firm's antitrust department, referring to him as the "dean of the Bar," and stating that his peers in the legal profession hold him in the "highest regard," and explicitly praised him for, among other things, his "fair minded[ness]."

In addition to being one of the courtroom trial counsel for plaintiffs in the mandatory punitive damage class action in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague has served as lead or co-lead counsel in many antitrust class actions, including *In re Infant Formula Antitrust Litigation* (1993) and *Bogosian v. Gulf Oil Corp.* (1984), a nationwide class action against thirteen major oil companies. Mr. Montague was co-lead counsel for the State of Connecticut in its litigation against the tobacco industry.

Mr. Montague was one of four co-lead counsel in *In re Brand Name Prescription Drugs Antitrust Litigation*, M.D.L. 997 (N.D. Ill.), one of three co-lead counsel in *In Re High Fructose Corn Syrup Antitrust Litigation*, M.D.L. No. 1087 (C.D. Ill.), and one of two Co-Lead Counsel in *In re Microcrystalline Cellulose Antitrust Litigation*, M.D.L. 1402 (E.D. Pa.). He is currently Co-Lead Counsel in several antitrust cases, including: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, (E.D.N.Y.), and *In re Methyl Methacrylate (MMA) Litigation* (E.D. Pa.). In addition to the *Exxon Valdez Litigation*, he has tried several complex, protracted cases to jury, including three class actions: *In re Master Key Antitrust Litigation* (1977), *In re Corrugated Container Antitrust Litigation* (1980), and *In re Brand Name Prescription Drugs Antitrust Litigation*

11

(1998).  For his work as trial counsel in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague shared the Trial Lawyers for Public Justice 1995 Trial Lawyer of the Year Award.

Mr. Montague has frequently lectured on class action litigation for the Practicing Law Institute, the Pennsylvania Bar Institute and the Antitrust Section of the American Bar Association.  He has taught a Complex Litigation Course at Temple University Law School and has been a panelist at the Federal Bench-Bar Conference for the Eastern District of Pennsylvania.  Mr. Montague was a member of the 1984 faculty of the Columbia Law School Continuing Legal Educational Program entitled "The Trial of an Antitrust Case."  Mr. Montague has testified before Congress with respect to antitrust and business fraud legislation, including the Racketeer Influenced and Corrupt Organizations Act ("RICO").  In June, 2006, he addressed the Organization for Cooperation and Development in Paris on class actions and antitrust.  In March, 2007, he will be addressing a Joint European Commission/International Bar Association program on antitrust litigation.  He is currently a member of the Advisory Board of the Antitrust & Trade Regulation Report published by the Bureau of National Affairs, and a director of the Public Interest Law Center of Philadelphia.


### Merrill G. Davidoff


Merrill G. Davidoff, a Senior Shareholder in the firm, received a B.A. degree from the University of Pennsylvania in 1969, and a J.D. from the University of Pennsylvania Law School (*cum laude*) in 1973.  He is admitted to practice law in the Commonwealth of Pennsylvania, the State of New York, the United States Supreme Court, and numerous federal Courts of Appeal.  Mr. Davidoff is Co-Chairman of the Antitrust Department with H. Laddie Montague, Jr., chairs the Environmental Group, and has litigated and tried a wide range of securities, antitrust, and environmental class actions.

In the *Rocky Flats Nuclear Weapons Plant* class action where Mr. Davidoff is lead counsel, the Court held the United States Department of Energy in contempt of court after a one week trial in November, 1995 (reported at 907 F. Supp. 1460 (D. Colo. 1995)).  In 2005-2006, this class action finally went to trial (with Mr. Davidoff as lead trial counsel) and, in February 2006, the jury returned a special verdict for the plaintiffs for $554 million, the largest property damage class action jury verdict ever.  The Rocky Flats trial team led by Mr. Davidoff was one of seven finalists for the 2006 "Trial Lawyer of the Year" award from the non-profit foundation Trial Lawyers for Public Justice.

In *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.), one of the largest pending antitrust cases in the United States, H. Laddie Montague, Jr., Mr. Davidoff and Berger & Montague are one of the three Court-appointed co-lead counsel.

During a legal career spanning over 33 years, Mr. Davidoff has represented diverse clients, including Burger King Corporation; John I. Haas, Inc.; Joh. Barth & Sohn, A.G.; Karhu, Inc.; Rexroth Corporation/Rexroth GmbH; ADVO System, Inc.; the LeFrak Organization; Mannesmann A.G.; Championship Auto Racing Teams, Inc.; Cascade Steel Rolling Mills, Inc.; Carpenter Technology Corp.; the State of New Jersey; the City of Philadelphia; and the Ohio State Teachers Retirement System. He has also represented many other large and small companies, sports teams, professional organizations, individuals and professional firms. He has acted as lead counsel and lead trial counsel in numerous antitrust, commercial, environmental, and securities cases. He represented Championship Auto Racing Teams ("CART"), a major Indy-car race-sanctioning organization, in a series of antitrust cases against Indianapolis Motor Speedway and others.

Mr. Davidoff has been a speaker at American Trial Lawyers Association meetings and seminars. He is also a member of the Antitrust and Business Law Sections of the American Bar Association, and served on the subcommittee of the American Bar Association Antitrust Section which prepared the 1985 supplement to the "Antitrust Civil Jury Instructions."

Mr. Davidoff served as co-lead and trial counsel for a plaintiff class in the first mass tort class action trial in federal court which resulted in a precedent-setting settlement for class members, *In re Louisville Explosions Litigation*. In the Canadian Radio-Television and Telecommunications Commission ("CRTC") Decisions (*Challenge Communications, Ltd. v. Bell Canada*), Mr. Davidoff was lead counsel for Applicant (plaintiff) in three evidentiary hearings before the CRTC. The hearings resulted in the first precedent breaking Bell Canada's monopoly over the telecommunications equipment which was connected to its telephone network. He was lead counsel in the *Revco Securities Litigation*, an innovative "junk bond" class action, which settled for $36 million. Mr. Davidoff was lead plaintiffs' counsel and lead trial counsel in *In re Melridge Securities Litigation*, tried to jury verdicts for $88 million (securities fraud) and $240 million (RICO). He was co-lead counsel for the class in the *In re Graphite Electrodes Antitrust Litigation*, an international price-fixing case which yielded settlements ranging from 18% to 32% of the plaintiffs' and class' purchases from the defendants (aggregate settlements totaled $134 million). He was one of co-lead counsel in the *Ikon Securities Litigation*, in which a settlement of $111 million was obtained. He was co-lead counsel and designated lead trial counsel in the *In Re Sunbeam Securities Litigation*,

13

where settlements of $110 million were reached with the auditors and an additional $32 million with the individual defendants and the insurers. One of his areas of concentration is representation in commodities futures and options matters, and expertise in derivatives. He has represented market-makers on the Philadelphia Stock Exchange, where he owned a member firm in the early 1990s, as well as broker-dealers and market-makers on other exchanges.

## Daniel Berger

Daniel Berger graduated with honors from Princeton University and Columbia Law School where he was a Harlan Fiske Stone academic scholar. He is presently a senior member and shareholder of the firm, for which he serves as a Managing Shareholder. Over the last 15 years, he has been involved in complicated commercial litigation including class action securities, antitrust, and bankruptcy cases. In addition, he has prosecuted several important environmental, mass tort and civil rights cases during this period. He currently is co-chair of the firm's antitrust department and leads the firm's practice involving the pharmaceutical and medical device industries including several landmark cases involving the suppression of generic competition in the pharmaceutical industry and which have been successfully resolved. In civil rights area, he has been counsel in informed consent cases involving biomedical research and human experimentation by federal and state governmental entities. He also leads the firm's employment discrimination practice area.

In the antitrust area, he has headed up the Firm's involvement in highly successful litigation against brand and generic prescription drug manufacturers in which the Berger Firm has been co-lead counsel, a member of various executive committees or otherwise played a key role including, *inter alia*, the following cases: *In re Buspirone Patent & Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.) ($220 million settlement for class of direct purchasers against branded anti-anxiety drug manufacturer that wrongfully blocked market entry of less-expensive generic competition); *In re Cardizem CD Antitrust Litigation*, No. 99-MD-1278 (E.D. Mich.) ($110 million settlement for class of direct purchasers against branded and generic drug heart manufacturers that agreed to withhold less-expensive generic versions from the market); *In re Relafen Antitrust Litigation*, No. 01-12239 (D. Mass.) ($175 million settlement for class of direct purchasers against branded pain drug manufacturer that wrongfully blocked market entry of less-expensive generic competitors); *In re Remeron Direct Purchaser Antitrust Litigation*, No. 03-cv-0085 (D.N.J.) ($75 million settlement for class of direct purchasers against branded antidepressant drug manufacturer that wrongfully blocked market entry of less-expensive generic competition); *In re Terazosin Hydrochloride Antitrust*

14

*Litigation*, No. 99-MDL-1317 (S.D. Fla.) (approximately $75 million settlement for class of direct purchasers against branded and generic blood pressure drug manufacturers that agreed to withhold less-expensive generic versions from the market); *In re K-Dur Antitrust Litigation*, MDL Docket No.1419, No. 01-1652 (D.N.J.) (pending action on behalf of direct purchasers against branded and generic drug manufacturers alleged to have agreed to delay entry into the market of less-expensive generic versions); and *In re Nifedipine Antitrust Litigation*, MDL No. 1515 (D.D.C.) (pending action on behalf of direct purchasers against generic drug manufacturers alleged to have agreed to allocate between themselves the markets for dosage strengths of drug).

Daniel Berger also has a background in the study of economics having done graduate level work in applied micro-economics and macro-economic theory, the business cycle and economic history. He has published law review articles in the *Yale Law Journal*, the Duke University *Journal of Law and Contemporary Problems*, the *University of San Francisco Law Review* and the New York Law School *Law Review* and worked with the American Law Institute /American Bar Association program on continuing legal education. He  has been affiliated with the Kennedy School of Government through the Shorenstein Center of Media and Public Policy at Harvard University.  He is currently a partner of the Democracy Alliance and  extensively involved in progressive politics in this country on a national, state and local level.

Mr. Berger has been active in city government in Philadelphia and was a member of the Mayor's Cultural Advisory Council, advising the Mayor of Philadelphia on arts policy and the Philadelphia Cultural Fund which was responsible for all City grants to arts organizations. Mr. Berger was also a member of the Pennsylvania Humanities Council, one of the State organizations through which the NEA makes grants.

Mr. Berger is also an author and journalist and has published in *The Nation* magazine and reviewed books for the *Philadelphia Inquirer*.

### Ruthanne Gordon

Ruthanne Gordon is a graduate of the University of Michigan (B.A. 1974) and the University of Pennsylvania Law School (J.D. 1979).  Since joining the Berger firm in 1982, she has concentrated on the litigation of antitrust, securities and environmental class actions, and derivative litigation, including the following complex antitrust cases, among others:  *In re Microcrystalline Cellulose Antitrust Litigation* (E.D. Pa.)(shortly before trial the case was settled for $50 million); *In re*

*Currency Conversion Fee Antitrust Litigation* ($336 million settlement pending); *In re Compact Disc Antitrust Litigation; State of Connecticut v. Philip Morris, Inc., et al.,* in which the State of Connecticut recovered approximately $3.6 billion from certain manufacturers of tobacco products; and *In re Commercial Tissue Antitrust Litigation*. She has also played a lead role in litigation involving the following industries: the real estate industry (*Lyons v. Calderone, et al.* (D.N.J.); *Best v. Koger Equity, Inc., et al.* (M.D. Fla.)); the computer industry (*In re Convex Computer Corporation Securities Litigation* (N.D. Tex.); *Heideman v. Toreson, et al.* (N.D. Cal.)); public utilities (*In re Philadelphia Electric Company Derivative Litigation* (Phila. C.C.P.); *In re PSE&G Derivative Litigation* (N.J. Super. Ct. Ch. Div.)); *the environmental services industry (Houston Corporation v. Environmental Systems Company, et al.* (E.D. Ark.)); the tobacco industry (*Friedman v. RJR Nabisco, Inc., et al.* (S.D.N.Y.)); the biotechnology industry (*In re Biogen Inc. Securities Litigation* (D. Mass.)); and the healthcare industry (*In re W.R. Grace & Co. Securities Litigation* (S.D.N.Y.)), among others.

Ms. Gordon was co-lead counsel in *In re PSE&G Derivative Litigation*, where she argued complex issues of first impression before the New Jersey Supreme Court. She was also counsel in *In re Louisville Explosion Litigation,* a class action case alleging property damage, which was prosecuted through a six-week trial and settled at the close of plaintiffs' case for more than one hundred percent of actual damages.

In addition, Ms. Gordon represented a class of Pennsylvania inmates in a federal civil rights class action, which resulted in the establishment of a statewide treatment program for Pennsylvania inmates suffering from post-traumatic stress disorder as a result of their service in the Vietnam war.


### Martin I. Twersky

Mr. Twersky, a graduate of Yeshiva University (B.A. 1969, M.S. 1973), has practiced Antitrust Law and Complex Litigation at the firm for over 25 years, during which time he has successfully represented numerous plaintiffs and defendants in both individual and class actions pending in state and federal courts. His practice has involved litigation in the oil and gas, banking, airline, waste hauling, agricultural chemicals and other regulated industries. He is a graduate of the University of Pennsylvania Law School (J.D. 1980). Among other cases, he has played a leading role in the following class action cases: *In re Linerboard Antitrust Litigation* (E.D. Pa.) (as a member of the Executive Committee, he helped obtain settlements of more than $200 million dollars); *In re:*

16

*Graphite Antitrust Litigation* (E.D. Pa.) (settlements of more than $120 million dollars); *In re: Catfish Antitrust Litigation* (N.D. Miss.) (as a member of the trial team he helped obtained settlements of more than $27 million dollars); *In re: Revco Securities Litigation* (N.D. Ohio) ("Junk Bond" class action where settlements of $36 million were reached); *Bogosian v. Gulf Oil* (E.D. Pa.) (landmark litigation with settlements and injunctive relief on behalf of a nationwide class of gasoline dealers); and *Lease Oil Antitrust* (S.D. Tex.), where in a significant class action decision, the Fifth Circuit affirmed the granting of an injunction prohibiting settlements in related state court actions (*see* 200 F.3d 317 (5th Cir. 2000), *cert. denied*, 530 U.S. 1263). Mr. Twersky has also played a key role in various non-class action cases, such as *Kutner Buick v. America Motors*, 848 F.2d 614 (3rd Circuit 1989) (breach of contract) (cited in the Advisory Committee Notes to the 1991 Amendment to Rule 50, Fed. R. Civ. P.), *Florham Park v. Chevron* (D.N.J. 1988) (Petroleum Marketing Act case), and *Frigitemp v. IDT Corp.*, 638 F. Supp. 916 (S.D.N.Y. 1986) and 76 B.R. 275, 1987 LEXIS 6547 (S.D.N.Y. 1987) (RICO case brought by the Trustee of Frigitemp Corp. against General Dynamics and others involving extortion of kickbacks from Frigitemp officers). Mr. Twersky also served prominently in savings-and-loan related securities and fraud litigation in federal and state courts in Florida, where the firm represented the Resolution Trust Corporation and officers of a failed bank in complex litigation involving securities, RICO and breach of fiduciary duty claims. *E.g.*, *Royal Palm v. Rapaport*, Civ. No. 88-8510 (S.D. Fla.) and *Rapaport v. Burgoon*, CL-89-3748 (Palm Beach County).

### Peter R. Kahana

Peter R. Kahana is a Phi Beta Kappa graduate of Dickinson College (B.A. magna cum laude 1977) with a degree in Philosophy. Mr. Kahana graduated from Villanova Law School (J.D. 1980) where he was a member of the *Villanova Law Review*. He is admitted to practice in the Commonwealth of Pennsylvania and has clerked at the appellate court level for The Honorable Gwilym A. Price, Jr., of the Superior Court of Pennsylvania. Following his clerkship, Mr. Kahana joined the Berger firm in 1981. Mr. Kahana has diverse trial and appellate court experience in complex civil and class action litigation, and he has successfully represented both plaintiffs and defendants in numerous state and federal courts across the country. Mr. Kahana has also played a leading role in major antitrust and environmental litigation, including cases such as *In re Brand Name Prescription Drugs Antitrust Litigation* ($723 million settlement), *In re Ashland Oil Spill Litigation* ($30 million settlement), and *In re The Exxon Valdez* ($286 million compensatory damage and $5 billion punitive damage award – currently on appeal). In connection with his work as a member of the litigation

team that prosecuted *In re The Exxon Valdez*, Mr. Kahana was selected to share the 1995 Trial Lawyer of the Year Award by The Trial Lawyers for Public Justice Foundation.

Mr. Kahana has also handled many nationwide, multi-state, and state class action cases involving relief for insurance policyholders, as well as consumers of other types of products or services, who have been victimized by fraudulent conduct or unfair business practices. In 2004, Mr. Kahana was named as the recipient (along with his co-counsel) of the Association of Trial Lawyers of America's Steven J. Sharp Public Service Award for his successful settlement ($20 million) of *Bergonzi v. Central States Health and Life Company of Omaha*, a case involving an insurer's refusal to pay for health insurance benefits to thousands of cancer victims for chemotherapy and radiation treatment. The award is presented annually to those attorneys whose cases tell the story of American civil justice and help educate state and national policy makers and the public about the importance of consumers' rights.


### Peter Nordberg

Peter Nordberg is a graduate of Harvard College (A.B. 1980) and the University of Pennsylvania Law School (J.D. 1985), where he received the Fred G. Leebron Award in Constitutional Law and the John H. Maurer Memorial Prize in Criminal Procedure, and where he served as an Executive Editor of the *University of Pennsylvania Law Review*, authoring "The Petition Clause and Unauthorized Practice Rules," 132 U. Pa. L. Rev. 1515 (1984).

Since joining Berger & Montague in 1990, Mr. Nordberg has practiced in state and federal courts across the nation, in diverse areas of complex civil litigation including mass tort and environmental litigation, qui tam actions, antitrust matters, securities cases, and ERISA litigation. He recently served as co-counsel for plaintiffs in the four-month trial of *Cook v. Rockwell Int'l Corp.*, where claims for trespass and nuisance against two former operators of the Rocky Flats Nuclear Weapons Plant were tried to verdict on behalf of a class of Colorado property owners, resulting in a half-billion dollar jury award. In 2005, he served as a member of the plaintiffs' trial team in Washington State for the inaugural bellwether trial in the *Hanford Nuclear Reservation Litigation*, helping to win what is believed to be the first verdict in history in favor of personal injury plaintiffs suffering from cancer caused by offsite exposures to radiation released by operators of a nuclear weapons facility. In 2003, he was appellate counsel in *Ileto v. Glock*, in which the Ninth Circuit approved a public nuisance action against gun manufacturers for injuries inflicted by the unlawful use of their products.

18

Mr. Nordberg is also founder and author of the web site "Daubert on the Web," a nationally recognized resource on the law of expert evidence. He is admitted to practice in Pennsylvania, and he is also a member of the bar of the United States Supreme Court and numerous U.S. Courts of Appeals.


### David F. Sorensen

Mr. Sorensen graduated from Duke University (B.A. *magna cum laude* 1983) and from Yale University (J.D. 1989). He was Law Clerk to the Hon. Norma L. Shapiro (E.D. Pa.), in 1990-1991. He was admitted to the Pennsylvania bar in 1989, and is admitted to practice in various federal courts, including the Eastern District of Pennsylvania, and the United States Courts of Appeals for the Ninth, Tenth, and Eleventh Circuits.

Mr. Sorensen practices in the areas of complex mass tort and antitrust class action litigation. He helped try a class action property damage case, *Cook v. Rockwell Corp.*, that resulted in a jury verdict of $554 million on February 14, 2006, after a four-month trial, on behalf of thousands of property owners near the former Rocky Flats nuclear weapons plant located outside Denver, Colorado.

Mr. Sorensen also played a major role in the firm's representation of the State of Connecticut in *State of Connecticut v. Philip Morris, Inc., et al.*, in which Connecticut recovered approximately $3.6 billion (excluding interest) from certain manufacturers of tobacco products.

Mr. Sorensen also has been involved in a number of antitrust cases representing direct purchasers of prescription drugs. These cases have alleged that pharmaceutical manufacturers have conspired to keep less expensive generic drugs off of the market, in violation of federal antitrust laws. Several of these cases have resulted in substantial cash settlements, including *In re Terazosin Hydrochloride Antitrust Litigation*, MDL 1317 (S.D.Fla.) ($75 million); and *In re Remeron Antitrust Litig.* ($75 million).

### Jonathan D. Berger

Jonathan D. Berger is a graduate of the Wharton School of the University of Pennsylvania (B.S., Economics, 1980) and the Delaware Law School (J.D. 1985). Mr. Berger was a Judicial Law Clerk for the Honorable Charles P. Mirarchi, Jr., Court of Common Pleas of Philadelphia in 1986 and 1987. Since joining Berger & Montague, in September 1987, he has been involved in class actions and complex commercial litigation including the *Exxon Valdez Oil Spill Litigation*; *Norplant Contraceptive Litigation*; *In re Domestic Airlines Antitrust Litigation*, 137 F.R.D. 677 (N.D. Ga. 1991); *Ford/Firestone MDL Litigation*; *Unisys ERISA Benefits Litigation*; *In re Asbestos School Litigation*, Master File No. 83-0268 (E.D. Pa); *Commercial Explosives Antitrust Litigation*; and *Vitamins Antitrust Litigation*. Additionally, Mr. Berger has been actively engaged in other complex cases including multi-party litigation involving hydraulic engineered systems.

### Bart D. Cohen

Bart Cohen graduated from the University of Pennsylvania in 1984 with two degrees, from the Wharton School and the School of Engineering and Applied Science. After working as a software developer, he graduated in 1989 from the Georgetown University Law Center, where he was a member of the American Criminal Law Review, and authored the "1987 Computer Crime Update" in the journal's survey of white collar crime. Since joining the Berger firm in 1991, Mr. Cohen has concentrated on antitrust litigation, including *In re Infant Formula Antitrust Litigation* (N.D. Fla. 1993), *In re Carbon Dioxide Antitrust Litigation* (M.D. Fla. 1996), and *Callahan v. A.E.V., Inc.*, 182 F.3d 237 (3rd Cir. 1999) (reversing dismissal of antitrust claims of several small beer distributors). He has also represented an automobile dealership in antitrust litigation against its franchisor, *Mercedes-Benz, U.S.A. v. Coast Automotive Group, Ltd.* (D.N.J.). Mr. Cohen is admitted to practice in the Commonwealth of Pennsylvania, the Eastern District of Pennsylvania and the Eleventh Circuit Court of Appeals.

### Eric L. Cramer

Eric L. Cramer is a shareholder with the Philadelphia law firm of Berger & Montague, P.C., where he has practiced since 1995. Mr. Cramer has been repeatedly selected by Chambers USA America's Leading Lawyers for Business as one of Pennsylvania's top antitrust lawyers; has been deemed a

20

"Super Lawyer" by Philadelphia Magazine; and was selected as a "Rising Star" by Lawdragon.com. Mr. Cramer has focused his practice on complex litigation in the antitrust arena, including prosecuting antitrust class actions in the pharmaceutical and medical device industries. In the last several years, Mr. Cramer and his colleagues have won substantial settlements for the clients and class members he has represented from pharmaceutical industry defendants for a combined total of more than $700 million in cases involving the following drugs, among others: *Cardizem CD, Buspar, Platinol, Terazosin, Relafen,* and *Remeron*.

Mr. Cramer, a member of the advisory board of the American Antitrust Institute, is a frequent speaker at conferences and symposia on issues involving antitrust, public policy, the pharmaceutical industry, and complex litigation more generally.  Among other writings, Mr. Cramer co-authored an article entitled *The Superiority of Direct Proof of Monopoly Power and Anticompetitive Effects in Antitrust Cases Involving Delayed Entry of Generic Drugs*, 39 U.S.F. LAW REV. 81 (Fall 2004). He is a summa cum laude graduate of Princeton University (1989), where he was elected to Phi Beta Kappa.  He graduated cum laude from Harvard Law School with a J.D. in 1993.

### Bret P. Flaherty

Bret Flaherty graduated from the University of Pennsylvania (B.A. 1989 in Economics and Political Science) and from Tulane University Law School (J.D. *cum laude* 1992). He is admitted to practice in the Commonwealth of Pennsylvania.

He specializes in complex commercial and consumer protection litigation and transactional corporate law. He was the sole associate for a claimed 10 year verbal contract case which resulted in a $30 million recovery for the client. *See Provident American Corp. and Provident Indemnity Life Insurance Company v. The Loewen Group Inc. and Loewen Group International Inc.*, E.D. Pa., Civil Action No. 92-1964.

Mr. Flaherty is actively involved with Asian American United, a community based organization located in Chinatown serving Philadelphia's diverse Asian communities.

## **Charles P. Goodwin**

Mr. Goodwin joined Berger & Montague, following his 1992 graduation *cum laude* from the University of Pennsylvania Law School, where he was an editor of the *University of Pennsylvania Law Review*. Prior to attending law school, Mr. Goodwin graduated *cum laude* from Williams College (where he received the Graves Essay Prize in economics), and enrolled in graduate studies in economics at Stanford University. Between college and law school, Mr. Goodwin was a researcher with the Normative Aging Study, an epidemiological study jointly conducted by the Harvard School of Public Heath, Boston University and the then-Veterans Administration. While practicing law, he has also pursued graduate study in philosophy at the University of Pennsylvania and Temple University.

During his career at Berger & Montague, Mr. Goodwin principally has practiced in antitrust litigation and employee benefits. Mr. Goodwin played a central role in recovering $531 million in settlement for purchasers of high fructose corn syrup from ADM, A.E. Staley, Cargill, American Maize-Products and Corn Products Corporation on claims that they had fixed prices and allocated volumes among themselves, in a litigation that lasted ten years and involved four fully briefed appeals to the United States Court of Appeals for the Seventh Circuit. (*In re High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087 (C.D. Ill.)) He led Berger & Montague's efforts in obtaining one of the seminal opinions concerning electronic discovery in *Xperior Inc. v. Credit Suisse First Boston (USA) Inc.*, 309 F. Supp. 2d 459 (S.D.N.Y. 2003). Mr. Goodwin served as lead counsel to the state court class action plaintiffs in a settlement yielding significant structural and monetary relief on behalf of GNC franchisees in *Duarte v. GNC*, No. 00-cv-332 (W.D. Pa.), and *Powers v. GNC Franchising, Inc.*, No. GD 99-6778 (Allegheny County). Additionally, he has helped retirees in recovering medical benefits, worth hundreds of millions of dollars, that were revoked by their former employers (*In re Unisys Retiree Medical Benefits ERISA Litigation*, MDL No. 969 (E.D. Pa.), *Local 56 UFCW v. Campbell Soup Co.*, No. 93 MC 276 (D.N.J)), and millions in assets mis-invested by their pension funds (*Rose v. Cooney*, No. 5:92-CV-208 (D. Conn.)). Mr. Goodwin was one of two course planners for the Pennsylvania Bar Institute's Fundamentals of Antitrust Law seminar in 2004. Mr. Goodwin has also arbitrated complex legal malpractice claims.

Mr. Goodwin is admitted to practice law in the Commonwealth of Pennsylvania and the State of New Jersey.

## Peter Russell Kohn

Peter Kohn is a 1989 graduate of the University of Pennsylvania (B.A., English) and a 1992 *cum laude* graduate of Temple University Law School, where he was senior staff for the *Temple Law Review* and recipient of awards for trial advocacy.

Prior to joining the firm in July of 2000, Mr. Kohn defended products liability, toxic and mass tort cases on behalf of insureds and self-insureds at LaBrum & Doak (1992-1994) and prosecuted toxic tort, civil rights, class, and MDL actions at Monheit, Monheit, Silverman & Fodera (1994-2000), where he first-chaired several complex and expert-intensive jury trials and argued a variety of pre-trial, post-trial, and appellate issues in state and federal courts.

A member of the firm's antitrust department, Mr. Kohn has helped prepare for trial several noteworthy lawsuits under the Sherman Act, including *In re Buspirone Patent & Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.), *In re Cardizem CD Antitrust Litigation*, No. 99-MD-1278 (E.D. Mich.), *J.B.D.L. v. Wyeth-Ayerst Laboratories, Inc.*, No. C-1-01-704 (S.D. Ohio), *In re Relafen Antitrust Litigation*, No. 01-12239 (D. Mass.), *In re Remeron Direct Purchaser Antitrust Litigation*, No. 03-cv-0085 (D.N.J.), and *In re Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317 (S.D. Fla.). He has also prosecuted a variety of consumer fraud and toxic exposure actions and has argued numerous pre-trial and appellate issues arising therefrom.

### Michael C. Dell'Angelo

Michael C. Dell'Angelo graduated from Connecticut College (B.A. 1994) and The Catholic University of America, Columbus School of Law (J.D. 1997). At the Columbus School of Law he was a member of the Moot Court Honor Society and Phi Delta Phi.

At Berger & Montague, Mr. Dell'Angelo specializes in antitrust, securities and complex litigation. He is a member of the Philadelphia and American Bar Associations.

Prior to joining Berger & Montague, Mr. Dell'Angelo was an associate at Miller Faucher and Cafferty LLP, where he concentrated in antitrust, securities, and complex commercial litigation. In his capacity at Miller Faucher, Mr. Dell'Angelo also practiced before the Federal Trade Commission. He also devoted a substantial portion of his practice to the prosecution of numerous class action lawsuits on behalf of survivors of slave labor during the Holocaust. These suits, against German companies, resulted in a $5.2 billion German Foundation to pay Nazi-era claims.

Mr. Dell'Angelo's *pro bono* work includes the representation of an Alabama death row inmate. That representation resulted in a reversal of the client's sentencing by the Sixth Circuit and a grant of a writ of habeas corpus vacating the client's death sentence.

**ADDITIONAL BERGER & MONTAGUE COUNSEL SUBSTANTIALLY INVOLVED IN *MEIJER, INC. & MEIJER DISTRIBUTION, INC., ET AL. V. ABBOTT LABORATORIES*, NO. C 07-5985 CW (N.D. Cal.)**

### Daniel C. Simons

Daniel Simons is a member of Berger & Montague's Antitrust Department. He received a Bachelor of Arts in Political Science, magna cum laude, from Yeshiva University in 1997. In addition to winning the Political Science departmental award two years running, Mr. Simons also garnered three awards for scholastics and student leadership upon graduation.

He earned his J.D., with honors, at Temple Law School in May, 2000, where he headed three student groups, served on Temple Law Review, and interned in the Health Care Fraud Unit of the United States Attorney's Office. Following graduation, he clerked for the Honorable Berle M. Schiller of the Eastern District of Pennsylvania. He has also served as a volunteer in the Philadelphia Reads program.

He has participated extensively in antitrust litigation in the pharmaceuticals and medical device sectors, and was significantly involved in winning class certification in *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365 (D.D.C. 2007).

Mr. Simons is admitted to practice in Pennsylvania and New Jersey, as well as the United States District Courts for the Eastern District of Pennsylvania and for the District of New Jersey. He is a member of the American Bar Association and its Antitrust Section.

### Candice Enders

Candice Enders is a member of Berger & Montague's antitrust department. She received a B.A. in political science from the University of Delaware in 2000 and earned her J.D. from the University of Pennsylvania in 2003.

While in law school, Ms. Enders served as a senior editor on the Journal of Labor and Employment Law, volunteered as a legal advocate at the Custody and Support Assistance Clinic, and interned at Philadelphia City Council.

Firm Resume for Norvir.wpd

25